Ruffin, Chief Justice.
 

 In bringing trover, the plaintiff affirms the property to be in him, by virtue of the attachment. He puts his case, therefore, on the same footing as if the horse had been taken under a
 
 fieri facias;
 
 and, therefore, it may be assumed that he is right. At all events, a sheriff derives, under an attachment, no better right in the defendant’s property, than he would under
 
 afi. fa.
 
 How, then, would it stand, if these seizures had been upon executions, instead of attachments?
 

 On that point, our opinion is, decidedly, that a sheriff, who, after seizing goods, leaves them on the premises of the debt- or, not separated from the other goods of the debtor, and for the use of the debtor or his family, as before the seizure, does thereby
 
 prima facie
 
 lose his property in them, upon -the grounds of presumptive fraud or abandonment; unless the delay to remove them be but for a reasonable time, and then be accounted for by the state of the property — as for example — that it was a growing crop, or an article in the course of being manufactured, or the like.
 

 We believe the decisions on the point in our own country are not uniform. But, in England, the doctrine seems settled; and, as far as we are apprised, that doctrine has prevailed in this State. If the creditor himself direct the sheriff’ not to seize property, or, after seizing, nqt to remove or sell it, and then another creditor deliver his execution, the sheriff may and ought to satisfy the latter. The conduct
 
 of
 
 the former creditor is deemed fraudulent; and, therefore, he is postponed, and is deprived of any remedy against the sher
 
 *91
 
 iff who only obeyed instructions.
 
 Rice
 
 v.
 
 Sarjeant, 7
 
 Mod.
 
 37
 
 —Bradley v.
 
 Wyndham,
 
 1 Wils.
 
 44
 
 —Edwards v.
 
 Harbin, 2
 
 T. R.
 
 596
 
 —Palmer v.
 
 Clarke, 2
 
 Dev. Rep. 354. If, by directing such conduct in the officer, or concurring in it, the creditor loses his lien on the property and his action against the sheriff it follows, where the refusal or deceptive delay to proceed on the execution is the act or omission of the sheriff himself, that
 
 he
 
 cannot have redress against another creditor or his officer, who seizes the debtor’s goods in execution. The action against a person who takes goods out oí the sheriff’s possession, is given to the sheriff not for the benefit of the creditor, but for the benefit of the sheriff. The creditor is secure in the responsibility of the sheriff for not seizing property when he can; and to the value of property once seized, though not sold, because it was taken away by another person.
 
 Sly
 
 v.
 
 Finch,
 
 Cro. Jac. 514. The creditor cannot sue a trespasser; but he looks to the sheriff and the latter to the trespasser. For the indemnity of the sheriff therefore, the law vests the property in him, and gives him appropriate actions. Therefore he must be careful not to do, of his own accord, an act, which, if done by the direction of the plaintiff in the execution, would discharge the property from that execution, as against another creditor or his officer. Accordingly, we find it laid down by the text writers, that after a sheriff has seized goods, it is his duty to remove them to a place of safe custody, until they can be sold. This is a duty so simple in itself as to be easily understood, and as easily performed; and, therefore, there should be no encouragement to its non-observance. It is usual, in England, for the sheriff to remove the goods immediately; or to leave his bailiff in charge of them on the premises, either until they can, within a reasonable time, be removed, or, by the consent of the debtor, until the sale. But, unless they be removed, or some person be left in charge of them, the goods are in the possession of the debtor himself, and not in
 
 custodia legis;
 
 and, consequently, are liable for the party’s other debts. The modern case of
 
 Blades
 
 v.
 
 Arundale,
 
 1 M. & S. 714, was decided on this single point. The sheriff after levying a
 
 fi.
 
 fa., went away from the prem
 
 *92
 
 ises, leaving no one in charge of the goods, and the landlord. distrained them for rent; upon which the sheriff brought trespass. Lord Ellenbokough said he was not aware of
 
 any case
 
 wbere, upon an abandonment of the possession by the sheriff, the goods had still been holden to be in the custody of the law, so as to make a party distraining them a trespasser. So, likewise, we think it must be as to making that act a conversion. For, how does the property become vested in the sheriff? It is by the seizing, the taking them into possession; and nothing less. The execution only creates a lien; the taking possession carries the property. Then,
 
 e convnrso,
 
 the property which was gained by
 
 the possession.
 
 also goes with it.
 

 If this be so in England, there is yet more reason for adhering closely to the rule in this State. With us, process of execution is issued from so many different tribunals, Federal and State, and it is confided to so many different and independent officers as to make it highly expedient, with a view to the interests of creditors and the safety of officers, that we should not put this question upon nice distinctions, but upon some broad general principle, intelligible to officers, and conducive to the healthy administration of justice, though in some lew cases it may be productive of some hardships, or inconveniences. The rule can only be called into operation in the cases of insolvent defendants; and, in such cases, it is better for all parties the true state of things should be known at once. The true principle, therefore, as we think, is, that the property of a debtor, as against his creditors, ought not> by operation of law, to be divested and vested in the sheriff,, but by some act as obvious and notorious as the nature and state of the property will permit. That, in the case of ordinary personal chattels, like the present, is effected by taking and keeping possession, and by that only; and, therefore, it is required. In thus speaking, we consider that we are only repeating what has ever been deemed to be law in this State. For, we believe the custom has been uniform, either to [remove the goods at once, or in some way to take them out . ol the debtor’s disposal and use; or, instead of leaving a bailiff in charge, to take a forthcoming bond, as permitted by
 
 *93
 
 the act of 1807. (1 Rev. Stat. ch. 45, sec. 17.) .That act, however, does not authorise the goods to be left on the premises and keep them bound, as against other executions. For, it merely allows the sheriff to obtain that indemnity for himself, without changing his responsibility. He is not obliged to take the bond; and, if he takes it and leaves the property, he does so at the risk of the surety in the forthcoming bond; and, in case of his failure, at his own risk; unless, indeed, the surety procure the sheriff to leave him, the surety, or some one else as the ¡¿reriff’s deputy, in charge of the goods.
 
 Denson v.
 
 S
 
 ledge,
 
 2 Dev.
 
 136
 
 —Gray
 
 v.
 
 Bowls, 1 Dev. & Bat. 437. Here, it is stated expressly, that the horse was left for the use of the debtor’s family, and no one was left in charge.
 

 Sharpes’ knowledge of the sheriff’s seizure cannot have any effect; for he knew also of its abandonment; and he was therefore bound to take it on the process in his hands.
 

 Wherefore we deem the judgment erroneous, and direct a
 
 venire de novo.
 

 Pee Cueiam. Judgment reversed.